RON CUMMING ET AL., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, APPELLANTS, AND BOB LINDERHOLM, APPELLEE, v. RED WILLOW SCHOOL DISTRICT NO. 179, ALSO KNOWN AS SOUTHWEST PUBLIC SCHOOL DISTRICT, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, AND AMERITAS INVESTMENT CORP., A NEBRASKA CORPORATION, APPELLEES.

730 N.W.2d 794

Filed April 26, 2007.   No. S-06-025.

Jeffery R. Kirkpatrick, of McHenry, Haszard, Hansen, Roth & Hupp, P.C., for appellants.

Kelley Baker and John Selzer, of Harding, Shultz & Downs, for appellee Red Willow County School District No. 179.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This appeal involves the same school district reorganization that was before us in *Nicholson v. Red Willow Cty. Sch. Dist. No. 0170.*[1] Appellee Red Willow County School District No. 179, also known as Southwest Public School District (Southwest),

[1] *Nicholson v. Red Willow Cty. Sch. Dist. No. 0170,* 270 Neb. 140, 699 N.W.2d 25 (2005).

was formed as the result of the reorganization of Red Willow County School District No. 0170 (Twin Valley) and Red Willow County School District No. 0109 (Republican Valley), both of which were dissolved pursuant to a reorganization petition and plan approved by the State Committee for the Reorganization of School Districts (State Committee) on May 9, 2003. The issue presented in this case is whether the appellants, who are all residents and electors of Southwest, may collaterally attack and seek to enjoin the issuance of bonds by Southwest pursuant to the approved petition and plan. For the reasons discussed in *Nicholson*, we conclude that they cannot.

## BACKGROUND

Southwest is a Class III public school district and political subdivision of the State of Nebraska. The appellants reside and own property in the geographic area encompassed by Southwest.

On January 29, 2003, the boards of education of Twin Valley and Republican Valley voted to approve a petition and plan to reorganize by dissolving the two school districts and creating a new Class III district in their place. The petition and plan provided:

> Neither the Twin Valley Public School District nor the Republican Valley Public School District has any bonded indebtedness existing on the date of the signing of this Petition. However, if the voters of both the existing Twin Valley Public School District and the existing Republican Valley Public School District vote to authorize the issuance of bonds in elections in both school districts, any authority to issue bonds, and any bonded indebtedness created pursuant to such authority which exists on the effective date of the dissolution and reorganization of the existing Twin Valley Public School District and the existing Republican Valley Public School District shall become the authority and/or obligation of the New School District.

The reorganization petition was contingent upon the approval of separate bond issues in both Twin Valley and Republican Valley.

Separate bond elections were held in Twin Valley and Republican Valley on March 25, 2003. The voters of Twin Valley approved, by a vote of 296 to 266, the issuance of bonds by Twin Valley in the amount of $3,495,000 for the purpose of paying the

costs of land acquisition, constructing a school building, and providing for necessary furniture and apparatus for such a building. Republican Valley voters approved, by a vote of 296 to 272, the issuance of bonds by Republican Valley in the amount of $3,495,000 for the same purposes as the Twin Valley bond issue. The issuance of the bonds was made contingent upon the approval of identical bond issues by the voting electors of each district, and upon the approval of the petition and plan as required by law. The petition and plan specifically stated that any authority to issue bonds by the two existing districts would be transferred to the newly formed district. Neither Republican Valley nor Twin Valley ever issued any bonds based on the authority of the elections held on March 25, 2003.

On May 9, 2003, the State Committee approved the petition and plan for reorganization. As a result, Twin Valley and Republican Valley were dissolved and reorganized into Southwest, which is validly established and existing pursuant to Neb. Rev. Stat. § 79-405 (Reissue 2003).

On September 28, 2005, Southwest's board of education voted to issue bonds in the amount of $6,990,000 for the acquisition of land, construction of a building, and furnishing of that building for a new school. Since the inception of Southwest, no bond issue has been submitted to the qualified voters of that school district. Southwest relied upon the bonding authority transferred from its predecessor districts under the approved petition and plan.

On October 14, 2005, the appellants filed a class action lawsuit against Southwest and Ameritas Investment Corp. in the district court for Lancaster County. They sought injunctive relief preventing the issuance of the bonds without a vote of the electors of Southwest. They also sought a declaratory judgment that "Nebraska law does not allow for the transfer of bonding authority from dissolving school districts to successor school districts."

Southwest moved for summary judgment, and a hearing was held on stipulated facts. The district court granted Southwest's motion for summary judgment and dismissed the case. Relying on our holding in *Nicholson*, the court determined that

> [the appellants] have been adversely affected by the State
> Committee's action in approving the [petition] which called

for a transfer of the bonding authority from Twin Valley and Republican Valley to Southwest. The fact that they have chosen a different argument to present to the Court than Nicholson chose, is not material. Their remedy, just as Nicholson's, was to appeal from the State Committee's decision as provided for in [Neb. Rev. Stat.] § 79-413(4) [(Supp. 2005)].

The appellants timely appealed from the order of the district court. We granted Southwest's petition to bypass the Court of Appeals.[2]

## ASSIGNMENT OF ERROR

The appellants assign that the district court erred in sustaining Southwest's motion for summary judgment.

## STANDARD OF REVIEW

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

## ANALYSIS

■ We understand the order of the district court to be a determination that it lacked subject matter jurisdiction over what it deemed to be an impermissible collateral action similar to that in *Nicholson*. When a lower court lacks the authority to exercise its subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[4] Accordingly, we address this threshold jurisdictional issue.

*Nicholson* involved a claim for injunctive relief seeking to prevent the issuance of bonds and the implementation of the reorganization petition, and a declaration that the petition and Neb. Rev. Stat. § 79-422(1) (Reissue 2003) were unconstitutional under Neb. Const. art. VII, § 4. Section 79-422(1) provided in part: "Bonded indebtedness approved by legal voters

---

[2] See Neb. Rev. Stat. § 24-1106(2) (Reissue 1995).

[3] *Pfeil v. State, ante* p. 12, 727 N.W.2d 214 (2007).

[4] *Chase 3000, Inc. v. Nebraska Pub. Serv. Comm., ante* p. 133, 728 N.W.2d 560 (2007); *Kaplan v. McClurg*, 271 Neb. 101, 710 N.W.2d 96 (2006).

prior to any change in school district boundary lines pursuant to sections 79-413 to 79-421 shall remain the obligation of the school district voting such bonds unless otherwise specified in the petitions." We noted in *Nicholson* that the reorganization petition and plan approved by the State Committee did "'otherwise specify'" a reallocation of bonded indebtedness, and we held that a challenge to this term could be brought only in an appeal of the State Committee's action pursuant to § 79-413(4) or, alternatively, through a petition in error.[5] Accordingly, we held that the challenge in *Nicholson* was an impermissible collateral action over which we had no jurisdiction.

In this action, the appellants seek to enjoin the issuance of the same bonds on slightly different grounds. They contend that the phrase "[b]onded indebtedness" used in § 79-422(1) is limited to bonds which are actually issued prior to the reorganization and does not include the authority by the successor district to issue bonds at some time in the future. Southwest counters that the phrase must be read in context with language which immediately follows, i.e., "[b]onded indebtedness approved by legal voters prior to any change in school district boundary lines," and that when so read, the statute permits a successor district to issue bonds approved by the legal voters of the predecessor districts which were dissolved in the process of reorganization.

As in *Nicholson*, the appellants' objection to the issuance of the bonds is in reality an objection to the terms and conditions of the petition and plan, which provide that if voters of both Twin Valley and Republican Valley vote to authorize the issuance of bonds prior to the reorganization, "any *authority to issue bonds, and any bonded indebtedness* created pursuant to such authority which exists on the effective date of the dissolution and reorganization . . . shall become the *authority and/or obligation* of the New School District." (Emphasis supplied.) The petition and plan clearly contemplates a transfer of both existing bonded indebtedness, if any, and the authority to issue bonds which were approved by voters but not issued prior to the reorganization. The appellants' claim—that this transfer of authority to issue bonds

---

[5] *Nicholson v. Red Willow Cty. Sch. Dist. No. 0170, supra* note 1, 270 Neb. at 146, 699 N.W.2d at 30.

is not permissible under § 79-422(1)—is really an argument that the State Committee should not have approved the petition and plan because of this provision. But the State Committee did approve the petition and plan, and the appellants apparently did not exercise their right to judicial review either by petition in error or by appeal pursuant to § 79-413(4). The issue of statutory construction which the appellants now seek to raise could have been resolved in such a review proceeding, but neither this court nor the district court has jurisdiction to address it in this collateral proceeding.[6]

Perhaps recognizing this obstacle, the appellants argue that a collateral attack is permissible if the State Committee was without authority to act. Relying on *School Dist. of Gering v. Stannard*,[7] they contend that any action by the State Committee which is prohibited by statute is void and is subject to collateral attack.

In *Stannard*, the plaintiff brought a collateral action to determine the validity of a school district reorganization petition approved by the county superintendent, the predecessor to the State Committee. The petition in question called for a change in school district boundaries by transferring land from one school district to another school district. We recognized that if the petition were legally sufficient, the county superintendent had jurisdiction to approve the petition. However, we acknowledged that the county superintendent's "proceedings may be attacked collaterally when such proceedings are void and the county superintendent lacks jurisdiction."[8] In analyzing the petition, we found that state law unequivocally prohibited the specific transfer of land from one school district to another, as was attempted by the petition. Thus, the county superintendent had no authority to act, as the substance of the petition clearly contravened state law. We concluded that the action of the county superintendent in approving the petition was void and was subject to collateral attack.

---

[6] See *Nicholson v. Red Willow Cty. Sch. Dist. No. 0170, supra* note 1.

[7] *School Dist. of Gering v. Stannard*, 193 Neb. 624, 228 N.W.2d 600 (1975).

[8] *Id.* at 629, 228 N.W.2d at 605.

As in *Nicholson*, we reject the argument that *Stannard* permits a collateral attack directed at the authority of Southwest to issue bonds pursuant to the reorganization plan approved by the State Committee. The appellants are not contesting the legitimacy of Southwest as a school district and, thus, cannot be understood to be challenging the State Committee's approval of the reorganization petition itself. Instead, the appellants are challenging a provision contained within the approved petition. And unlike *Stannard*, we cannot say that the challenged provision is, on its face, clearly and unequivocally prohibited by state law. Therefore, we have no basis to find that the State Committee's approval of the reorganization petition was void.

Based on our rationale in *Nicholson*, we conclude that the appellants have brought an impermissible collateral action as to which neither the district court nor this court has subject matter jurisdiction. Accordingly, we do not reach the substantive issues presented.

## CONCLUSION

The State Committee approved the reorganization petition and plan pursuant to which Southwest seeks to issue bonds previously authorized by Twin Valley and Republican Valley voters. The transfer of bonding authority is permitted by the approved petition and plan. The reorganization itself is not void. Accordingly, this challenge to Southwest's authority to issue bonds does not fall within the subject matter jurisdiction of the district court or this court. The district court did not err in dismissing the action, and we dismiss the appeal.

APPEAL DISMISSED.